## STANDARD OIL CO. OF NEW JERSEY v. UNITED STATES.

### Customs Appeal No. 4332.

Court of Customs and Patent Appeals.

June 9, 1941.

Sharretts & Hillis, and Edward P. Sharretts, all of New York City, for appellant.

Charles D. Lawrence, Acting Asst. Atty. Gen., and Richard F. Weeks, both of New York City, for appellee.

BLAND, Judge.

The Standard Oil Company of New Jersey placed in a United States bonded warehouse fuel oil imported from Aruba, Netherlands West Indies, and in the early part of 1938, under a vessel supply entry, withdrew 1,640,944 gallons of said oil and sold the same for use as fuel supplies on the steamship "Leviathan." The "Leviathan" had, by sale, passed to English ownership and the registry thereof had been changed from American to British.

At the time of taking the oil, the ship was English owned and the oil was used for propelling the ship under its own power from New York City to Rosyth, Scotland, where it was broken up and reduced to scrap material. The ship was purchased for no other purpose than for its scrap metal value. The outward clearance of the ship was made upon a shipper's export declaration, customs form 7525, wherein it was described as "Goods shipped," namely, "1 Steel Passenger Steamer." The said ship left New York and arrived in Scotland in ballast without carrying cargo or passengers.

The Collector of Customs at the port of New York assessed duty on the said fuel oil at the rate of ½ cent per gallon under section 601(c) (4) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 605, and refused to allow exemption from said tax so levied on the ground that he was unable to find that the vessel was actually engaged in foreign trade. The construction of said section 601(c) (4) is not in dispute here.

The importer protested the assessment of said duty and demanded a refund of the amount so paid, basing its claim upon the exempting provision of section 630 of said Revenue Act of 1932, as amended June 16, 1933, 26 U.S.C.A. Int.Rev.Acts, page 624, which amended section reads:

"§ 630. Exemption from Tax of Certain Supplies for Vessels. Under regulations

prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or *actually engaged in foreign trade* or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 601(b). [Italics ours.]"

The United States Customs Court, First Division, sustained the collector's action, overruled appellant's protest, and entered judgment in favor of the Government. From the judgment of the trial court, appellant has here appealed.

Appellant rests its case chiefly upon the decision of the Supreme Court of the United States in the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23, and upon the legislative history of the said exempting provision. It contends that the exemption in said section applies to the instant transaction for the reason that the "Leviathan" was actually engaged in foreign trade when the oil was sold and used. Appellant argues that while the vessel was a necessary part of the commercial transaction, inasmuch as it was sold to buyers in a foreign country, this fact was not relied upon, but that the "'navigation' of the vessel from New York to Rosyth, Scotland, was in itself foreign trade." It reasons that in said case of Gibbons v. Ogden, the Supreme Court held that navigation was per se "within the commerce clause of the Constitution because it is universally acknowledged that navigation itself is a 'branch of trade.'"

In Gibbons v. Ogden, supra, Gibbons' right to operate a steam vessel in certain navigable waters of the United States, notwithstanding certain laws of the State of New York giving a monopoly of such right to others, was upheld by the Supreme Court of the United States upon the theory that the State law was repugnant to the Constitution of the United States which authorizes Congress to regulate commerce. Chief Justice Marshall wrote a very lengthy opinion for the court, and it was there held that the constitutional provision authorizing Congress to regulate commerce was a broad and sweeping one which should be given a broad and comprehensive meaning. It was there said (9 Wheat. at page 190, 6 L.Ed. 23):

" * * * The mind can scarcely conceive a system for regulating commerce between nations, which shall exclude all laws concerning navigation, which shall be silent on the admission of the vessels of the one nation into the ports of the other, and be confined to prescribing rules for the conduct of individuals, in the actual employment of buying and selling, or of barter. If commerce does not include navigation, the government of the Union has no direct power over that subject, and can make no law prescribing what shall constitute American vessels, or requiring that they shall be navigated by American seamen. Yet this power has been exercised from the commencement of the government, has been exercised with the consent of all, and has been understood by all to be a commercial regulation. All America understands, and has uniformly understood, the word 'commerce,' to comprehend navigation. It was so understood, and must have been so understood, when the constitution was framed. The power over commerce, including navigation, was one of the primary objects for which the people of America adopted their government, and must have been contemplated in forming it. The convention must have used the word in that sense, because all have understood it in that sense; and the attempt to restrict it comes too late."

In holding that the term "commerce" in the involved clause of the Constitution not only meant trade but navigation and the conduct of vessels, the court took up other portions of the Constitution which, it stated, threw light upon the broad meaning intended in the there controverted provision.

Appellant argues that foreign trade is a part of foreign commerce and that since navigation is a part of foreign commerce and since the Supreme Court has held that navigation was trade, the term "engaged in foreign trade" used in section 630 must cover the transaction at bar.

We are of the opinion that the decision in Gibbons v. Ogden, supra, has little, if any, bearing on the case at bar. Certainly the principle there announced is not controlling of the issue presented here.

The question here to be answered is: What did Congress mean when it enacted the amendment to the Revenue Act of 1932 by providing tax exemption upon oil which

was sold as fuel supplies for vessels "engaged in foreign trade"? Appellant argues that the legislative history shows the purpose of the enactment and that that purpose was stated by those in charge of the bill on the floor of the United States Senate. Senator Reed, who offered the amendment, and Senator Harrison who, as chairman of the committee, reported the bill and had charge of the same on the floor of the Senate during its passage, stated, in substance, that the exemption was made for the reason that vessels employed in the capacities named in the section were buying their oil in foreign ports, which resulted in loss of business to this country without obtaining any revenue, and that the exemption would enable those in the pursuits named to buy oil as cheap here as elsewhere. Appellant argues that the "Leviathan" could have reached Halifax, Canada, with a small amount of oil and there could have bought the bulk of the oil necessary to take the ship to Scotland, and that the purpose of the exemption in the act could be carried out only by permitting such a vessel as the "Leviathan," which it contends was engaged in foreign trade, to purchase oil free from any taxation.

If transactions like that at bar had been called to the attention of Congress, or if their occurrence were so frequent as to be within the congressional mind at the time of framing the exempting provision, we can conceive of no reason why it should not have used appropriate language to have included a transaction such as that at bar in the exempting provision, but there is nothing in the provision itself, or in the legislative history connected therewith, that would suggest that the Congress, when it used the term "actually engaged in foreign trade" had in mind circumstances like those presented by the instant appeal.

In our judgment, the "Leviathan" was not "engaged in foreign trade" within the meaning of the exempting provision in controversy. The vessel itself, rather than being engaged in foreign trade, was the article or merchandise involved in a foreign transaction. The trial court aptly stated: "No one will dispute that navigation is often essential to foreign trade, but it is a means to effect foreign trade and not the trade itself."

The trial court also pointed out, in effect, that if appellant's contentions were sustained, the result would be to free list all fuel oil used in all yachts and pleasure craft sold to buyers in foreign countries for any purpose whatever, although they were not engaged in transporting either merchandise or passengers for hire or merchandise for trade or sale.

The trial court quoted several dictionary definitions of "trade" and one definition of "foreign trade." In Funk & Wagnalls New Standard Dictionary we find the following definition of "foreign trade": the commercial interchange of commodities from different countries; export and import trade.

We agree with the trial court that to construe the controverted provision as appellant contends for would be to give it an unwarranted, strained construction. We think that when Congress used the term "actually engaged in foreign trade" it had in mind the common, ordinary meaning of the term "foreign trade" as defined in the dictionary definition above quoted.

The judgment of the United States Customs Court is affirmed.

Affirmed.